EDWARD STEUER v. ROYAL CIGAR CO.

1. AN ACTION TO RECOVER A BILLIARD BILL IS MAINTAINABLE.

Where the owner and proprietor of a billiard and pool table seeks to recover for an account incurred by one who has been the loser of a certain number of games, such games being played under an arrangement, well known by all concerned, that the loser was to pay for all games played and lost by him: *Held*, that such action is not brought for money won or lost at any "game" in such sense as that word is used in sec. 4269, Rev. Stat., and, therefore, the provisions of that section are not available to the defendant as a defense to such action.

2. WHAT CONSTITUTES GAMING, WINNING OR LOSING MONEY.

It is not gaming and not winning or losing money where there is an arrange ment whereby one party shall pay, if losing.

3. KEEPING OF A BILLIARD TABLE IS NOT AN OFFENSE UNDER SEC. 6934, REV. STAT. WHEN.

The keeping of a billiard table where the loser is simply to pay for the game, is not an offense under sec. 6934, Rev. Stat , but if such table is kept and used for gambling, it is an offense under that statute.

ERROR to Cuyahoga Common Pleas.

MARVIN, J.

The case of Edward Steuer v. The Royal Cigar Company, is a proceeding in error to the court of common pleas.

Suit was brought first before a justice of the peace by the Royal Cigar Company, which is a partnership, against Edward Steuer, charging that he was indebted to the Cigar Company upon an account.

Steuer answered that the account was for the use of a billiard and pool table, and that the account was incurred under such circumstances that the plaintiff was not entitled to recover.

The case was appealed to the court of common pleas and there tried, resulting in a verdict and judgment for the Cigar Company.

A petition in error is filed seeking to reverse that judgment.

The statute which is relied upon as a defense is sec. 4269, and is as follows:

"All promises, agreements, notes, bills, bonds, or other contracts, mortgages or other securities, when the whole, or any part of the consideration of such promise, agreement, conveyance, or other security is for money or other valuable thing whatsoever, won or lost, laid, staked, or betted, at or upon any game, of any kind, or under any denomination or name whatsoever, or upon any horse race or cock fight, sport or pastime, or on any wager, or for the repayment of money lent or advanced at the time of any game, play, bet or wager, for the purpose of being laid, betted, staked or wagered, shall be absolutely void, and of no effect."

The bill of exceptions shows this state of facts: That Steuer visited a place of business carried on by the plaintiff below frequently; that in that place of business was a billiard and pool table; that games were played there under an arrangement well known to the proprietor, that the loser of the game should pay ten cents for each game played; and this account upon which suit was brought accrued in that way.

He played games enough to come to somewhere between $150 and $200 where he had been loser, at ten cents per game. Now he says that he cannot be compelled to pay because of the section of the statute to which attention has just been called. The question, then, in the case is, does the plaintiff below, the defendant in error here, make his claim for money won or lost at any game?

Our statute, sec. 6934, making it an offense to keep a place for gambling or to have gambling devises in one's place of business, reads:

"Whoever keeps or exhibits for gain, or to win or gain money or other property, any gambling table (except billiard table), or faro or keno bank, or any gambling devise or machine of any kind or description, under any denomination or name whatsoever," is guilty of an offense. In the same section, it also says:

"Or keeps or exhibits any billiard table for the purpose of betting or gambling, or allows the same to be used for any such porpose," is guilty of an offense.

Now if the keeping of a billiard table to be used as this billiard table was used, constitutes the keeping of it "for the purpose of betting or gambling," then a man who keeps it is guilty of an offense under sec. 6934, Rev. Stat.

I suppose it has never been claimed, however that the keeping of a billiard table where the loser is simply to pay for the game, is an offense under that statute; but, if it is kept and used for gambling, it is an offense under that statute.

The question of whether it is gaming and is an offense on the part of the owner of the building or of the keeper who knows that the game is played, not because of any arrangement with him, because everybody knows it, and the evidence in this case shows that the proprietor did know that the arrangement was that the loser should pay for the game — but it does not seem to us that this constitutes the claim for money won or lost at a game in such sense as that term is used in sec. 4269, Rev. Stat.

The courts of different states have discussed this matter of what constitutes gaming and what constitutes the winning and losing of money at any game and they have not agreed. In some states they have held that it is winning or losing money to have an arrangement whereby one party shall pay if losing; in others, it is held otherwise and we are disposed to hold with the courts which say it is not gaming and not winning or losing money.

In Blewett v. State, 34 Miss., 606 this language is used:

"To constitute gaming one or the other of the parties must expect to profit by the game. Here neither could derive such profit, because neither was entitled to the fee paid to the owner of the table. Admitting that it is the rule of the game that the loser shall pay the fee, the owner has a perfect right to make his contract in this way, the law not prohibiting this mode of contract."

In State v. Hall 32 N. J. Law Rep., 158, the court says:

"The third and last question propounded to this court is whether a public ten-pin alley kept for hire by the game, where the practice of the loser of the game paying for the use of the alley is habitually suffered, is a common gaming house.

"The solution of this question depends on the consideration, whether under such circumstances the parties playing lay a wager on the game which they play. The transaction is this: the keeper of the alley lets it to players on the condition that the loser shall pay him for its use. It would seem to be an unnecessary refinement to say, that when the players accept these terms, and play under them, that when one lays a wager with the other, dependent on the result of the play. It is obvious the parties do not play for gain—they play simply for amusement, and it seems like putting gloss on the affair to call this gaming.

"In the case of People v. Sergeant, 18 Cow., 139, this precise subject came under the consideration of the Supreme Court of the state of New York, and the result was that it was declared that such a practice did not amount to gaming.

"In Blewett v. State, 34 Miss., 606, a similar view was expressed and there are no opposing decisions. The place of amusement in question can not, on this ground, be declared illegal."

But if it is gambling, it would be il... ...t in Ohio.

It does not seem to us that the su... ...ought for money lost at any game in such sense as that word is us... ...the stat... e, and the judgment is affirmed.

*T. J. Ross*, for plaintiff in error.

*Chapman and Howland*, for defenda... ...n error.